**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| RICKIE A. CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:09cv106 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Rickie A. Carter ("Carter") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Carter claims disability from December 31, 2001, due to low back pain arising from an accident which occurred in 1990 while Carter was serving in the United States Marine Corps. After carefully reviewing the entirety of Carter's administrative record and medical history, the court finds that the Administrative Law Judge's ("ALJ") evaluation of Carter's physical and mental impairments is supported by substantial evidence. As such, the Commissioner's decision must be affirmed.

**I**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585,

589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v.

Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520).  If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

At the time of the ALJ's decision in this case, Carter was 49 years old (Administrative Record, hereinafter "R." 23), and was considered a "younger individual" under the Act.  20 C.F.R. §§ 404.1563(b), 416.963(b).  Carter completed high school and obtained an associate degree in computer science in the mid 1990s.  (R. 469-70.)  Carter served in the United States Marine Corps for 14 years, where he worked as an engine mechanic.  (R. 111, 120.)  In approximately 1990, while in the Marines, Carter was injured when he fell backwards onto some concrete blocks.  (R. 462.)  In 1992, he received a medical discharge.  Carter worked as a construction laborer at a number of jobs over the next nine years, last working as an iron worker.

---

[1] RFC is a measurement of the most a claimant can do despite his limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p.  RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain).  See 20 C.F.R. §§ 404.1529(a), 416.929(a).

(R. 70, 82.) Carter alleges disability principally based on low back pain stemming from his 1990 fall. His application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ on August 17, 2006. (R. 456.) In determining whether Carter was disabled under the Act, the ALJ found that his back pain constituted a severe impairment but concluded that his hypertension, GERD and depression were not severe. (R. 15.) The ALJ found that Carter could not return to his past relevant work as a construction laborer, but retained the capacity to perform a less than full range of light work. (R. 22.)

Although the ALJ decided this case on November 14, 2006, the Appeals Council did not take action for more than two years. On February 5, 2009, it denied Carter's request for review. This appeal was filed in federal court on March 30, 2009, and the Commissioner moved for summary judgment on August 27, 2009. The case was transferred to the undersigned on September 18, 2009, and a scheduling order was issued on September 23, 2009. Although the scheduling order required Carter to file a brief, he did not do so. Carter, who is proceeding pro se, was given a second opportunity to file a brief, this time in response to a notice issued pursuant to Roseboro v. Garrison, 528 F. 2d 309 (4th Cir. 1975), which was sent on February 17, 2010. On March 5, 2010, Carter filed a brief response, stating that the social security system has wasted fourteen years of his life and that he was no longer pursuing social security disability. Carter stated that he was "going back to looking for a job. I will find jobs and lose jobs because of my medical condition." Although this written response was docketed as a motion to dismiss, the last sentence of the letter suggests that Carter continues to believe that his medical condition precludes him from working. Thus, the court will consider Carter's appeal on the merits.

4

**III**

Although Carter's back pain stems from his 1990 fall while in the Marine Corps, because of prior disability applications, his onset date in this case is December 31, 2001. Nevertheless, the court will consider medical records before that date to put Carter's disability claim in context.

The objective medical evidence in the record does not support Carter's claim of back pain disabling him from all work. The record contains a number of diagnostic tests, all of which reveal only minor degenerative issues with Carter's back. An MRI taken on December 31, 1996 noted mild focal disc protusion at L3-4 and mild degenerative facet disease at L4-5. (R. 155.) Another MRI taken on January 14, 1999 revealed "only mild degenerative disk disease at L4-5 and mild multilevel facet degeneration without significant stenosis." (R. 242.) A lumbar spine radiograph taken on October 25, 2005 noted transitional L5 vertebra and minimal degenerative disc disease. (R. 331.) A radiograph was performed on January 9, 2006, and it was compared to an MRI of the lumbar spine on February 18, 2006. The radiology report noted "[m]ild central annular tear at the L3-4 and L4-5 without any focal disc abnormality, central canal stenosis, or nerve root impingement." (R. 393.)

The ALJ found Carter's back disorder to be severe but that he retained the RFC to perform light work with some limitations. The majority of the medical opinions in the record are consistent with this conclusion. Carter was examined by Dr. Ronald S. Goings, a state agency physician, on October 25, 2005. Carter told Dr. Goings of his history of low back pain, stemming from his fall in 1990. After examining Carter, Dr. Goings provided the following insightful impression:

> Low back pain. The patient seems to be totally disabled from the back pain as per his words. He spends 90% of his time in bed because it hurts too much to get out. Pain is 24/7 with a fairly severe nature the majority of the time. He did try to say that there was variations in pain. I must have caught him on a good day because I did not detect a whole lot of abnormalities on physical examination. It does not really sound like he has radiculopathy in the legs, not really with a lot of leg weakness. He walked better than I thought he was going to, although he did seem to be showing a limp. I really did not understand why. He did not seem to have a whole lot of joint problems, this is not a systemic arthritis, etc., just an injury to the low back about 15 years ago that never got better.

(R. 329.)

The administrative record contains two Physical Residual Functional Capacity Assessments done by state agency physicians in 2002 and 2005. (R. 224-32, 332-38.) In each, the state agency physicians concluded based on a review of Carter's medical records that he could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk or sit about 6 hours in an 8 hour workday, and had no limitations in pushing or pulling, manipulation or vision. (R. 333.) In the 2002 evaluation, Dr. Donald R. Williams determined that Carter was limited to occasional stooping and crouching. In the 2005 evaluation, Dr. Shirish Shahane identified occasional postural limitations in climbing ramps or stairs, balancing, stooping, kneeling, crouching or crawling. Dr. Shahane concluded that Carter should not climb ladders, ropes or scaffolds and should avoid all exposure to hazards such as machinery or heights. (R. 334-35.) Dr. Thomas Phillips reviewed and agreed with Dr. Shahane's assessment on January 6, 2006. (R. 336.)

Carter was treated at the Veteran's Administration Medical Center ("VAMC") in Richmond for a number of years and had multiple treatments to relieve his back pain, including lumbar epidural steroid injections and facet joint steroid injections. These procedures provided

some pain relief, but according to Carter, became less effective over time. (R. 356.) There are no records of any medical treatment between October, 2003, when Carter was last seen at the Richmond VAMC, and January, 2006, when Carter began treating at the Salem VAMC. Following a February 2006 MRI, Carter was treated with lumbar facet joint injections in May, 2006.

The voluminous administrative record contains no medical opinions concluding that Carter is permanently disabled from all work and providing any detailed explanation. A Progress Note from an unidentified Richmond Veteran's Administration physician dated June 20, 2002 states that Carter was under care for chronic low back pain, chronic leg pain and COPD. (R. 170.) The note indicates that this was Carter's first visit to that physician, that he was totally disabled and that it was unknown as to when he could return to work as he still needed treatment. No further explanation or support for this notation is given. Rather than reflect a comprehensive assessment of Carter's ability to work, this Progress Note appears to be in the nature of a temporary work restriction.

It is clear from this record that Carter has not met his burden of establishing that he is permanently disabled from all work. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). There is no medical opinion in the record suggesting that Carter is disabled, and the ALJ was well justified in relying on Dr. Goings' examination of Carter and the uncontradicted state agency assessments of Carter's physical RFC, which formed the basis for the hypothetical question posed to the Vocational Expert ("VE") at step five. As such, the Commissioner's decision is supported by substantial evidence.

**IV**

To be sure, Carter has consistently complained of low back pain following his fall in 1990. In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Carter's subjective allegation that he is disabled by pain, but rather must determine, through an examination of the objective medical record, whether he has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether Carter's statements about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ was correct to find that Carter's allegations that are not supported by the medical records.

Further, it is clear from the record that the ALJ considered all of the evidence and formulated an appropriate hypothetical question to the VE, which fairly set out Carter's impairments. The record reflects that the ALJ considered all of Carter's impairments and

concluded that he could not return to his past relevant work as an iron worker. The ALJ posed a hypothetical question to the VE based on the RFC assessment of Dr. Shahane. (R. 480-01.) As such, the ALJ's decision falls well within the analytical framework set out in Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

In affirming the final decision of the Commissioner, the undersigned does not suggest that Carter is entirely free of all pain and subjective discomfort. However, the objective medical record simply fails to document the existence of any condition which would reasonably be expected to have resulted in total disability from all forms of substantial gainful employment. The ALJ properly considered all of the subjective and objective factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

Accordingly, the court will enter an Order **GRANTING** defendant's motion for summary judgment (Docket #12) and dismissing this case with prejudice.[2]

The clerk is also directed to send a copy of this Memorandum Opinion to plaintiff and counsel of record for defendant.

Enter this 24th day of March, 2010.

/s/ Michael F. Urbanski
United States Magistrate Judge

---

[2] As such, Carter's motion to dismiss (Docket #19) is **DENIED** as moot.